*In re* ESTATE OF FRANK MACAK, Deceased—(GEORGE MACAK, Admr., Plaintiff-Appellee, *v.* MARY ELLEN LANGLAND and MID-AMERICA FEDERAL SAVINGS AND LOAN ASS'N, Defendants—MARY ELLEN LANGLAND, Defendant-Appellant.)

(No. 57765;

First District (4th Division)—August 8, 1973.

*Rehearing denied September 11, 1973.*

Klein, Thorpe, Kasson and Jenkins, of Chicago, (Franklin W. Klein and E. Kenneth Friker, of counsel,) for appellant.

Arthur George, of Chicago, (James O. Basta, of counsel,) for appellee.

Mr. JUSTICE DIERINGER delivered the opinion of the court:

This citation proceeding was brought in the Circuit Court of Cook County by the administrator of the estate of Frank Macak to recover proceeds of a certificate of deposit held by a savings and loan association in the amount of $10,000. The defendants are Mary Ellen Langland and the Mid-America Federal Savings and Loan Association. The trial court held the entire $10,000 should be included in the estate, and Mary Ellen Langland appeals from the judgment.

The issue for review is whether a valid joint tenancy with a right of survivorship is created when a deposit of money is made in a savings and loan association where the signature card is signed on one side by two people in a joint tenancy and on the other by just one of the joint tenants as an individual account holder, and the certificate evidencing the deposit is issued in the name of the one joint tenant who signed individually.

Frank Macak and Josephine Macak, his wife, held a certificate of deposit in the amount of $10,000 in joint tenancy with right of survivorship in the Mid-America Federal Savings and Loan Association. Josephine Macak died in November of 1968. On January 30, 1970, Frank Macak closed out the old account and opened a new one, also in the amount of $10,000. A savings certificate was issued in the name of Frank Macak alone, but the signature card in possession of the savings and loan association was signed both as a joint account with his niece, Mary Ellen Langland, on one side of the card, and by himself, as an individual account holder, on the other side. There are no dates on the card and there is no evidence in the record to determine if the signatures were made contemporaneously or at different times.

Frank Macak died July 10, 1970. His administrator instituted this citation proceeding to include the proceeds of the certificate of deposit in the estate after finding the certificate issued in his name alone in his personal effects.

Mary Ellen Langland argues the joint tenancy agreement was proper and the administrator did not overcome the presumption of donative intent in favor of the surviving joint tenant; the joint tenancy agreement is controlling over the individual agreement regardless of which was signed first, and the fact that the certificate of deposit was issued solely in the name of Frank Macak is immaterial.

The signature card signed by both the decedent and Mary Ellen Langland provided that any funds placed in the account "shall be conclusively intended to be a gift at that time of such funds to the other signatory party * * *." In *Murgic v. Granite City Trust & Savings Bank* (1964), 31 Ill.2d 87, the court stated:

> "We hold that an instrument creating a joint account under the statutes presumably speaks the whole truth; and, in order to go behind the terms of the agreement, the one claiming adversely thereto has the burden of establishing by clear evidence that a gift was not intended. This burden does not shift to the party claiming under the agreement."

■■ We find nothing in the record which would indicate the administrator came forth with any evidence to overcome the presumption of donative intent, nor do we find anything in the record to indicate the joint tenancy agreement was improperly entered into.

■■ Whether the joint tenancy agreement was signed before or after the individual agreement is immaterial. If the decedent had signed the individual agreement first, he had the authority, as the sole owner of the account, to enter into a joint tenancy agreement with his niece. If the individual account were signed last with an intent to revoke the joint tenancy, it would still be in effect, because the nature of a joint tenancy agreement is such that it may not be terminated by a unilateral action of one of the parties, even though each has the authority to draw out all of the money. Section 4—10 of the Illinois Savings and Loan Act (Ill. Rev. Stat., ch. 32, par. 770) provides in part:

> "(e) No addition to any account, nor withdrawal, payment, revocation, or change of beneficiary or payee, shall affect the nature of the account as a joint account with right to survivorship, trust account, or payment of death account."

■■ The word "revocation" in the statute must refer to a unilateral revocation, since tenants may mutually agree to terminate an account. In *Siemianoski v. Union State Bank of South Chicago* (1926), 242 Ill.App. 390, there was a joint tenancy deposit agreement between a husband and wife, and the husband attempted to terminate the account by himself. The court held he could only terminate his interest in the account even though he could have withdrawn the entire amount and deposited

it in his own name, however, the account could be terminated altogether only by mutual agreement of the parties.

■■■ The fact the certificate of deposit was outstanding in the name of the decedent alone is not determinative of ownership. The certificate is merely a receipt for the deposit of money which the bank holds. In the case of *In re Estate of Gubala* (1967), 81 Ill.App.2d 378, a passbook was in the names of Leo Gubala and Stanley Wujastyk, with no reference to a joint tenancy form of ownership, but there was an account agreement signed by the parties as "joint tenants with right of survivorship and not as tenants in common." The court held the account agreement creates the account and determines the rights of the parties. Thus, the signature card containing the joint tenancy agreement, and not the certificate, determines the ownership of the funds.

It may also be noted that because the certificate is non-negotiable (Ill. Rev. Stat., ch. 32, par. 768), there can be no third party whose rights might be prejudiced due to the difference in names between the outstanding certificate and the account agreement.

For these reasons the judgment of the Circuit Court of Cook County is reversed.

Reversed.

BURMAN, P. J., and JOHNSON, J., concur.